v. Anthony Taylor. Mr. Donahue for the appellant. Good morning, Your Honors. May it please the Court, I'd like to reserve three minutes of my time for rebuttal, if I may. Granted. Your Honors, this appeal raises three questions, the first of which challenges the failure to suppress evidence under the Fourth Amendment, the second and third, raising evidentiary issues under the rules of evidence. And I propose to start with the constitutional issue. And that issue here are two iPhones that were seized under a warrant, providing officers with unbridled discretion to search through appellant Anthony Taylor's home and seize them. Let me could could I start with a question that goes to. Well, actually, that but but let me begin by asking what I think is clear, but I want to nail it down. You're you're not arguing that this is a general warrant, right? You're arguing that it's overly broad. What I'm arguing, Your Honor, to parse that distinction slightly is that taken as a whole, it's overly broad because there were some items authorized to be seized, such as controlled substance. Well, aren't the notion of a general warrant and an overly broad weren't really incompatible. I mean, I have understood the defense to be taking the position really from the start, or at least from the point of the motion to suppress that this is a warrant that was overly broad. We contend that the provision of the warrant authorizing seizure of cell phones that provision was it was in its own in itself general in character. So I think our brief probably did use the term overly broad and I apologize for that, Your Honor, but I would say that the constitutional isn't that the right isn't that the right analysis to go on the overly broad. Are you really suggesting this was a general warrant? Not the warrant as a whole, simply this particular. So we can call the warrant overly broad. Yes. And what I'm focusing on is. Well, it's it's it's your it was your client's motion. It's your argument from start through appeal. Now, we should be sufficiently refined in our arguments at this point in time to know just what it is you're attempting to suggest to the court. But it's so. So since since the responses to my questions have really been, I must say, equivocal. Let me ask this. It is clear from the record. Is it not that you are not challenging the execution of the search warrant? You're challenging the warrant itself. That's correct. All right. Now, what is it? If in fact, the argument is that the warrant was overly broad, hasn't the warrant, in fact, doesn't the warrant actually contain a language of limitation in it when it refers specifically to cell phones? It purports to include such limitation, but the proviso at issue is when you look at it, no limitation at all. It's simply explain that. I'm not sure. I think I know what you mean, but I'm not totally sure. Yeah, I don't know how language purports to be something that what is. Let's start with this. What is the word itself say with respect to the cell phones? Yes, it says that any and all cell phones used in the furtherance of and then at least about 12 verbs trafficking, storing, selling, illegal acquisition, possession, sale, trade, distribution. But but my point is utilized in the furtherance of isn't that language of limitation? The word doesn't say go in and get every cell phone within sight or within earshot. It says cell phones utilized in furtherance of the illegal and all of the rest of the language refers to forms of drug transactions or drug trade. That sounds like a limitation. We submit it's not a limitation efficient to satisfy the Fourth Amendment's particularity requirement because it actually offers officers no guidance, no meaningful guidance by which to distinguish cell phones that are within the scope of the warrant from cell phones, not within the scope of the warrant, because there's no way to look at a cell phone. With very rare exception and say, OK, there's reason to believe this phone was utilized in the furtherance of drug trafficking. That's all right. Let's let's look at let's look at a case that you, I believe, have relied on to a considerable extent in your briefing. And that's the Griffith case from the D.C. Circuit. You've relied and you cited to that case, have you not? Yes, your honor. All right. The majority the majority in Griffith issued an opinion with some language that I find interesting and perhaps even applicable. Yes, I grant you that Griffith involved a shooting, did it not, as opposed to a drug transaction? Yes, correct. All right. So Griffith, the Griffith majority stated that the warrant in that case should have been limited, quote, to devices owned by Griffith or devices linked to the shooting. That's suggesting language of limitation, is it not? In Griffith. No, I think that language is insufficient, your honor. Now. Now, Griffith. Well, that's well understand. That's what the D.C. Circuit is suggesting should have been done in that case or could have been done in that case, but was not. So you're you're disagreeing that the D.C. Circuit has set forth what it considers some limiting language. Well, what the D.C. Circuit said more broadly in connection with that limiting language that there might be circumstances where police would be unable to identify the make or model of a cell phone. They said, strangely, this was a bit of a naive observation, but the point holds. They said perhaps police are working with an informant and they don't know what number is involved in that case. I think Griffith was endorsing language of the kind your honor has quoted. I turn to this court's decision from 2006. A critical rule that stands in tension, I believe, with the language you're quoting is that whether or not compliance has been made with the particularity requirement depends on the information known to officers at the time they apply for the warrant. And here, what's truly striking about this case is that the officers specifically knew of two phone numbers, two different phone numbers that the informant, contrary to the Griffith hypothesis, had in fact given the officers and the warrant application wholly neglected to include that fact. It made no reference to the known phones. Why, why should it what what would that add isn't that really a an oversight on the part of an of the officers executing the warrant in the process of execution. Why does that make the word application deficient in any way. Well, it's deficient because by not disclosing that fact in the warrant application. The affiance obscured a question that it was for the magistrate judge to answer. And namely, that question was whether the warrant must be limited to the two phones, of which the officers had probable cause to believe were instrumentalities of this crime, or, if in fact, the warrant could extend more broadly. And on the application submitted. Had it included the fact of these two phone numbers, then the magistrate would otherwise have had before him or her, only a single relevant averment, which was the officers statement that based on his experience drug traffickers commonly use more than one, quote unquote, more than one. And that's that page 31 of the appendix. So if the application I've listed two cell phones. The only other statement is traffickers commonly use more than one. What basis would a magistrate judge have to say, you can see these two of which you know, and any, you know, any others that you encounter. I understand the magistrates error, but the information was withheld from the magistrate. Yeah, I'm not sure I understand your argument. I, I thought you were arguing in so far as you're narrowing your argument, not the execution, but the warrant itself. I thought you were arguing that the warrant in order to determine whether or not a particular cell phone is within the scope of the warrant, you have to first seize the phone and then make that it's almost like the plain view doctrine that if upon seeing an item you don't immediately know whether or not it is contraband, you can't then manipulate it to get to the serial number to determine whether or not it matches the stolen serial numbers. And I thought you were saying here they had two phone numbers. They didn't put it in the warrant. And that meant that in order for the phones to be seized, the officers had the first seize the phones and determine whether or not the phones were within the warrant. And therefore, the warrant allowed for the seizure of items. It didn't sufficiently narrow the scope of the search. I thought that's what you were saying. Is that what you're arguing? That the warrant didn't sufficiently narrow the scope of the search. Yeah, you're saying, look, they had two cell phone numbers. They had three kids in here and the wife. And, and kids have, to my great, still boggles my mind, but kids have their own cell phones. So that they knew that there may be more cell phones in there than the two they knew that the client was using. And they could have reasonably limited the affidavit and the search warrant to cell phones bearing the following two numbers, those two cell phones and no other cell phones. In that way, the search would, the warrant would not have authorized seizure to anything. They didn't have probable cause of seize. I thought that's where you were going. That is where I'm going. Yes. Could I refer to the illusion you made earlier, Your Honor, to plain view? Because it adds a slight nuance. Which is that while I do believe the warrant would have had to be limited to those two phones. Of course, the warrant also authorized the search for controlled substances. So if, for example, there had been a phone found in the coffee canister outside the home where most of the drugs were found, you know, if in that coffee canister had been a digital scale, 30 grams of fentanyl and a phone, then I think, you know, although that phone is not particularly identified, they could seize it because Without allowance, yes, I think it should have been limited. Okay, but let's assume that the warrant was so limited. They'd still have to then physically seize the phone, even if the warrant was limited, to determine whether or not this phone had one of the phone numbers in the warrant. You get to the same place, don't you? I didn't realize that until just a second. Why wouldn't you get to the same place? You wouldn't because had the warrant been particularized in this way, occupants could have, if they wished, attempted to supply the officers with the phones specifically identified in the warrant, and thereby, they wouldn't have had to, there would have been no authority to seize other phones. No officer in the right mind is going to rely upon the occupants of a house to give them. The person would have had to show the officer, would have had to demonstrate to the officer that this was, whether by showing them the number or by having them call the number. Well, the problem with that is, and you do that, and you give the occupants of the house the means to wipe the phone. It might take longer than they would have, but that's, I can't imagine any officer in the right mind going into a house with a warrant and saying, okay, you guys, you let me know whether or not what you have there is within this warrant. That's not going to happen. Well, how about this then, Your Honor? I mean, that's a good point. But if the occupants were so savvy, and so much a criminal, and there's no one with that kind of criminal experience in this case, then perhaps they would want to insist, hey, call this number, here's the phone, call it, you're going to hear it ring. Then they wouldn't have to open it up. It would just be that they demonstrated it was the phone. If they weren't willing to do that, I agree with Your Honor, that it does seem that police might, well, they would have to, by the least intrusive means possible, determine which phones matched the description of the warrant, and that might require seizing more than two phones. But if the warrant had been adequately particularized, it would at least have alerted the occupants to the limitations upon the officer's team for authority. Can I ask a question before you sit down, or before we go to your opposing counsel? You're focusing on a couple of things pertaining and making a Fourth Amendment argument. But here the government has overwhelming evidence of Taylor's staged drug buys, drugs found in his home, and at least a purported confession. Isn't that evidence alone so strong that any error involving the cell phones, if there is error, is just simply harmless? No, Your Honor. The content of the phones, inasmuch as it was erroneously admitted for the reasons we've stated in issue two, but the content was very important. I guess what you're saying is the phones, the information found, were a tipping point, if you will. And I'm saying there's a big mountain to climb to get to that tipping point, and I'm not necessarily seeing it, so tell me why I'm wrong. Sure. The content of the phones was the sole corroboration that the prosecution had of the linchpin of its case, which was that supposedly, on the occasion of a jailhouse interview, Mr. Taylor told agents about drug activities. And that corroboration was of critical importance to the most serious charges, namely the two conspiracy charges. It was almost the only corroboration that the people whom agents recalled Taylor naming even existed. So without that, it wasn't in any sense harmless, at the very least, as to the conspiracy counts. Now, as to the substantive counts, I would like to call to the Court's attention the fact that different harmless error standards apply with regard to the several issues. So far as the Fourth Amendment issue goes, it's the government's burden to prove beyond a reasonable doubt that the outcome of the case would have been the same but for the error. Therefore, Your Honor, I believe the tipping point characterization means we win. If the phones were the tipping point on this matter, at least so far as the Fourth Amendment issue goes, then surely the government has not shown beyond a reasonable doubt that the content in any way, the Chapman v. California standard. That said, I do think it was more substantial than simply a tipping point and satisfies the stricter prejudice requirement for issues two and three as well. Judge Ambrose, do you have additional questions? No, sir. Judge McKee, additional questions of Mr. Donahue? Thank you. We'll have you back on rebuttal, Mr. Donahue. Mr. Kokas? Yes, I'm setting my timer. May it please the Court, AUSA Donovan Kokas on behalf of the United States. What puzzles me about the suppression argument is it has the feel of a modified Frank's argument that's based on kind of an anemic Fourth Amendment claim because it's essentially substituting the concept of probable cause in Frank's for particularity and overbreath, but it's otherwise the same. The more important point for me is that the interest he is asserting is anemic because he's only challenging a seizure and not a search. And that matters because Segura versus United States, the Supreme Court said in 1984 that only possessory interests are infringed by a seizure. And Segura also goes on to say, by the way, that seizures are generally less intrusive than searches. That matters because all of that makes Taylor's citation of the Reilly line of authority irrelevant because Reilly dealt with a warrantless search to a cell phone, which invades a privacy interest. We're not disputing searches to cell phones implicate privacy interests, but he's not challenging the search. And a factual question for you. Why? Why didn't the officers in this case tell the judge issuing the warrant that they knew of two specific phone numbers that were linked to Taylor? Your Honor, and so the answer is it's the same reason they didn't seek an arrest warrant based on the control buys. They're trying to protect the identity, the secrecy of the confidential informants identity, because, you know, in Pennsylvania, anyway, if you get an arrest warrant, you have to put in a bunch more information that would have identified the CIA. And then he or she's useless in the further investigation and he or she's in danger. And if you disclose the two phone numbers used that that person knew for the defendant, then the defendant can just have his wife or somebody go on to his cell phone records and see who called those two numbers that day. Then you can almost be certain who it is, as it was, the warrant was so explicit that it caused Taylor and his wife to strongly suspect that it was Skeldone correctly, but they weren't sure. So that's why that's. So, as far as, you know, what specifically permits a warrant like this, I mean, I think it consists of the Supreme Court's Andreessen case. Plus, I would say, Stabile, this court state is case in 2011, plus at least the general principle that judge Chief Judge Smith articulated in faith that you construe this requirement with some measure of flexibility. In this case, basically, you assess the items to be seized, the type of it and the circumstances or the type of crime. And here the issue is that the ownership and connection to a phone can be impossible to ascertain on site. And so sometimes, as even Griffith recognizes, you do have to seize an item to determine whether you need to search it. So that's the restrained approach that we took, even though the search, even though that first warrant technically did authorize a search. But we took the approach of just seizing it. And then after Taylor tells us 20 days later, here are the passcodes to get into him. We still don't search them right away because he withdraws his consent to search. And that creates some confusion as to where we are now. So we just took a belt and suspenders approach and went and got that second warrant. So that's where that is. And there are many cases in this circuit, all NPOs at this point. But there's one I cited in my brief. That's Paris, where Judge Restrepo had this interesting, long discussion of how it's it's complicated with cell phones and computers, I think. Because you just can't tell by looking. And but Andreessen covers that because you sometimes might have to grab a bunch of documents if they are commingled with the documents you want to to sort the wheat from the chaff kind of. So that's what I would address is Judge Chief Judge Smith's point to the opposing counsel. How is this case the same as or equivalent to or different from Griffith? Well, in your honor, thanks. I tried to distinguish that in my brief. For me, the main issue is, you know, when I read it, I didn't have a problem with the holding because the officers in that case don't have PC to suspect that this evidence exists anymore at all. It was like 11 months after this murder where they thought a cell phone might have had some record of it. And they don't have PC to suspect that once the defendant's out of prison, he even has the cell phone. And and on top of that, this is, you know, or this is quite a while ago. It's not like people even had cell phones commonly back in 2005. You did it. Griffin also was all devices. It wasn't even limited to cell phones. It was DVDs. It was everything. Right, right, right. That's right. And so, you know, I think that also makes a difference. And, you know, to me, all of that is what makes this distinguishable. Yes. If we had no PC to suspect, he even had cell phones. If the officer could only say, you know, oh, I know that defendants have cell phones, you know, that they often use them. If all you could say was that and we had like zero basis for thinking this guy did. And in fact, we had a basis for knowing some of his co-conspirators actually didn't have them. Then that would be a different story. My reason, of course, for referencing Griffith or more to the point, the specific portion of Griffith that I referenced was to demonstrate that the Griffith majority had suggested a way by which the breadth of the search, the breadth of the search for cell phones could be limited. And they made a specific recommendation. Would you agree? I agree with that. I agree they made the recommendation. Yeah. And further, I would suggest that there's some similarity in their recommendation of what could have been done to limit the reach to the language used in the warrant here. They said linked to devices linked to the shooting. And here the warrant application talked about utilized in further itself. Right. Correct. And I'm sorry, Your Honor, is that the end of your question? Well, yes. I'm all of which is an attempt, as I have been trying to discern whether the attack from the defense was on the warrant and not on the execution of the warrant. It seemed to me it was on the warrant and that the suggestion from the D.C. circuit of what would pass muster is similar to the language that did appear in this warrant. Yes, similar. And that language, by the way, has been viewed as a limiting principle. That language of that nature connecting something, you know, a search warrant or a search to a violation of a kind of crime even has been deemed sufficient since Andreessen even. So I understand the D.C. circuit saying this is one way you could limit it. I don't think it's the only way that's maybe even more limiting than it has to be. And I think the same paragraph your honor's discussing goes on to say, yes, you know, it may be difficult to tell just by looking at something that it's the thing you want to search. So sometimes you do have to seize it. And that's really the case with cell phone. And that was not the import of my question to suggest that it was the only one way. But again, I have understood from the outset the position of the defense here to be that this warrant authorized a wholesale search for any cell phones found anywhere within the residence or within the place searched. And my rejoinder to that is that's not what it says. In fact, it limits the cell phones to be searched or seized to cell phones that the officers would know to be utilized in the furtherance of or have some reason to believe were utilized in the furtherance of. And I would just modify that last part instead of that officers know to be. Remember, we're still a reasonable probability when they're in that house. Is there a reasonable probability that these phones are being used by him? That's why I that's why I modified my own language and continued with have reason to believe. Yes. Yes. So, yes. And I agree with that. And in the circumstances, I mean, what do we know before they draft the warrant? Single family home. He lives there. He's seen coming to and from it during both of controlled buys to or from it. OK, let me let me ask. Let me ask you then something that may not ultimately be material to the inquiry here. And that is because the attack has been on the warrant and not on the execution of the warrant. But doesn't it strike you as being really questionable investigatory and police methods to have seized two telephones? And then afterward or in the course of it, some of that search and seizure not have taken the steps necessary to know in the wake of the search where in the heck the phones actually had been located. One was in the bedroom under a pillow, but we don't know which one. And one was on the table near some drug paraphernalia. But but we don't know which one. I agree with your honor that the written record could be clear. But two things to that. One is Exhibit 19. I can file it for you for one, but it's in the district court record shows it's a photo taken of Mr. Taylor sitting there while the police are searching that morning. And right there on the table in front of him is the white iPhone. So from that, you can infer that the pink iPhone must have been underneath the pillow in the master bedroom, exactly where Detective Warfield thought it was. I can file that for if you want, but I absolutely agree with you when I have to start going and scrutinizing photos. I do wish you the best. I wish the documentation of the investigation had been better. That's correct. Got got got it. That that was how it struck me as well. Thank you. Yeah. Do you have a reason to believe or was there any reason to believe that I was using his wife's or his children's phones to conduct drug deals? No, you're I mean, the police certainly didn't have that any reason to believe that ex ante. And then even after the fact, no, other than the wife coming in and trying to testify that they were both her phones and she used them and all that. But no. And the pink nature of the phone, it's a little misleading because one of the officers testified is kind of a rose colored case. But that, to me, shouldn't be dispositive because the same thing like in the deal, where if you get on the computer of someone who you suspect has child pornography, if they're misleading labels for the files, that doesn't mean there isn't child pornography there. You may have to still look and in a similar way, a misleading color. I mean, if you're relying on officers to sort of gender stereotype and coming and getting phones, you know, be a pretty easy way for everybody. You know, every male criminal just is going to get a bright pink iPhone and put a whole bunch of kids. Judge, Judge McKee has just that color. And the style of it, too. Yes, here it is. Dear, dear honors want to hear about the, the cell bright issue or no I mean I have a little saying, I just wanted to follow up on one aspect of this. My turn here is, let's say I have probable cause that one of you. You're in a law firm and your partner is dealing drugs. But wouldn't you object if I seized and searched your phone. On that basis because you happen to be in the office at the time and your phone was sitting on your desk. When I'm sorry, go ahead. No, and the searches for the office. Yes, yes. Yeah, I, the difference I think they're your honor is it's for the office I mean I think I think this court is upheld searches of an entire fire station and competent seizures of all the computers there when they when the court knew child pornography. The Paris case I mentioned earlier involved I think. So this is drugs. Yes, yes, we suspect your partner we don't suspect you at all. So then I say no those are my drugs. No, no. They suspect your partner of dealing in drugs, they get a search warrant. And they come into the office. You got a separate office they see a phone sitting on the desk and they grab it. Yeah. Yeah, I probably would object and make a motion for return of property which didn't happen here. But yeah, I would object to the seizure and then I would hope that officers did, then what they did here which is show restraint and don't go searching anything, because that's why I think the the cigar case says the, you know, the, they look, it's less intrusive to seize than the search because if I see something of yours, I deprive you of the possessory interest but I can restore that to you completely just by giving it back. But once I've searched it I've deprived you of a privacy interest I can never. So I think this is the nature. Just to clarify that just a tad or take it out just tease it out one bit further. The partnership is a husband and wife lot small law firm. They suspect the husband of drugs they get a search warrant for the office. The wife's phone is on her desk, they grab it. Should they have done that. Well, I think under the terms of this warrant, perhaps they should do that at least seize it. Because otherwise I mean what happens is and does happen is that defendants can if they get some hint that police are coming they just like hand their cell phone to somebody else. You know, I think if they find it, and they have it there's a fair probability that some evidence of his drug trafficking would be on that phone then yes maybe, and a husband and wife. I mean, although Taylor's wife said she had no idea about this. I think there's a fair probability if your drug trafficking from your home phone or your office in your scenario, and you work there with your wife she's going to know. So, I think yes as to the seizure. And all of this eventually just goes to good faith and harmlessness anyway in this case. I'm out of time, I mean I can say something why I do want to say one more thing about the confession. The defendant keeps saying that if confessions uncorroborated. And that just isn't so we had three detectives testify that he confessed on one side and on the other side there was absolutely nothing because the only people who could say otherwise for him and his attorney, they didn't testify. And then it was corroborated by the drug seized by the testimony of scale down by the testimony of McPhrazer. So I mean it's not as though that thing was, you know, some big matzo ball hanging out there and nobody, nobody knows whether it's real or not. But, Judge McKee any further questions. I haven't done. Thank you. Judge, Judge Ambrose any further questions. Thank you very much, Mr. Cocus Mr. Donahue. You're on mute. Rebuttal, Mr. Donahue. Thank you, Judge McKee, the, I, I want to advise the courthouse to consider how striking my colleagues responses were first of all to your questions about Griffin, Chief Judge Smith, and secondly to your hypothetical judge Ambrose. Let's start with the hypothetical where Mr Cocos forthrightly stated that the wife's phone should be seized. And as I understood his logic it had something to do with the fact that the wife would have known her husband was dealing drugs. This goes to show the kind of logic. I don't mean to fault Mr Cocos for it. I'm not sure that you're confusing two different statements that he made when he referred to the wife, having known that the husband was saying, maybe I'm wrong. I did not at all interpret that it being offered as justification for the seizure of the wife's phone, which is correct. That was, that was, but perhaps the simpler point is simply that he acknowledged he thought officers should see that phone, when it was situated in such a way as to indicate it was not the phone of the sole person or probable cause existed. When you mentioned language from Griffith. Mr Cocos stated he thought that was that wasn't limiting enough either. I think the reason it's natural for this court to hear something like that is because the Fourth Amendment law of cell phones has candidly become extraordinary. And what Mr Gokas is telling you is that police should get blanket authorization to seize all cell phones on a premises, they execute a warrant that now Griffith for one. That is what it expressly disavowed that warrants cannot simply confer blanket authorization, and I would urge the court to read Griffith. In tandem with use of critical principle here is that it matters what information is known to officers at the time, they present their warrant application. Griffith didn't contemplate the situation where officers actually could identify two phones, specifically. And when they do have that information. They have to work the magistrate to it so the magistrate can determine what adequate particularity requires. When that particular priority requirement is enforced. As I said, it allows innocent occupants, such as a partner of a suspect guest to protect their own items by demonstrating that they are not the phones in the warrants, and that is the very purpose of the particularity requirement under grobey remunerants. Mr Gokas also stressed a distinction between a possessory interest in a phone and a privacy interest. Now first of all Griffith rejected that out of hand, making expressly clear, it understood that the challenge was to the seizure, and it was rolling that seizure was unlawful, with no credit to future searches of the contents. That's, if not the holding a rule stated expressly and Griffith. Even if Griffith didn't say that I would encourage your honors to think about the extraordinary importance of the simple possessory interest in a phone. I don't think any of us would want to go without our cell phone for a single day, perhaps not for a day to differ I'd like to shed mine, many, many a day. No days. Yeah, that was at all events, your time expired a bit ago. Mr Donahue. I think both of counsel we will take this matter under advisement.